**IN THE COURT OF APPEALS OF IOWA**

No. 20-0592
Filed June 17, 2020

**IN THE INTEREST OF H.B. and K.B.,**
**Minor Children,**

**L.B., Father,**
        Appellant,

**B.C., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District Associate Judge.

Parents separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Edward S. Fishman of Hopkins & Huebner, P.C., Adel, for appellant father.

Kelsey Knight of Carr Law Firm, P.L.C., Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

ConGarry D. Williams of Juvenile Public Defender, Des Moines, attorney and guardian ad litem for minor children.

Considered by Mullins, P.J., Greer, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**SCOTT, Senior Judge.**

Parents separately appeal the termination of their parental rights to their two children, K.B., born in 2017, and H.B., born in 2018, pursuant to Iowa Code section 232.116(1)(h) (2019).[1]  Both parents challenge the sufficiency of the evidence supporting the statutory ground for termination cited by the juvenile court, argue termination is contrary to the children's best interests, and maintain the court should have applied the exception to termination contained in Iowa Code section 232.116(3)(c).

## I.     Background Facts and Proceedings

Both parents have long histories of mental-health issues.  The family came to the attention of the Iowa Department of Human Services (DHS) in December 2017 when the mother was arrested for marijuana possession and child endangerment because her two older children were with her in her vehicle while she was smoking marijuana.[2]  A no-contact order was entered between the mother and children for the ensuing three months.  The mother pled guilty in March 2018 and was placed on probation.  At some point, the no-contact order was lifted and the children were returned to parental custody.  In April, concerns arose about the condition of the family home.  Pursuant to a safety plan, the children were placed with relatives while the parents worked on the condition of the home.  They made little progress, and they were ultimately asked to leave their apartment.  An order for formal temporary removal was entered in May, which was confirmed in July

---

[1] The mother has a third child, A.C., born in 2016, who is not involved in these appeals.

[2] Prior thereto, DHS provided services to the mother in relation to her inability to properly care for A.C.

following a removal and adjudication hearing. The mother underwent a substance-abuse evaluation, resulting in a recommendation that she engage in extended outpatient treatment. Both A.C. and K.B. were adjudicated as children in need of assistance.

Also in July, H.B. was born. He remained in the parents' care. Additional concerns arose regarding the father's substance abuse and domestic violence in the presence of the child. As a result of a family quarrel, DHS implemented a safety plan involving the mother and H.B. residing in a shelter. Thereafter, in September, the State filed a petition for adjudication as to H.B. Following another incident of domestic violence, the State applied for removal of H.B. The juvenile court entered an emergency removal order. The mother continued to associate with the father, and the instances of domestic violence continued. Following a hearing, the court entered an order confirming removal and adjudicating H.B. to be in need of assistance.

By October, the parents were engaged in substance-abuse and mental-health treatment. However, the father continued to test positive for marijuana use, and he had recently been the subject of dual arrests for drug possession and criminal mischief. DHS recommended a six-month extension as to K.B. The mother continued to participate in services through the time of the review hearing in May 2019. The parents were interacting with the children appropriately during visits and had obtained suitable housing for the family. Problems with domestic violence in the home appeared to have dissipated, but the father's participation in services was inconsistent. He was unsuccessfully discharged from mental-health treatment in March, and he continued to test positive for marijuana use. Despite

the father's lack of engagement, DHS recommended a six-month extension to work toward reunification. The court granted the request as to the mother, but directed the State to initiate termination proceedings as to the father.

Shortly after the juvenile court's review order, the father was arrested for domestic abuse assault against the mother. In July, pursuant to a plea agreement, the father pled guilty to an amended charge of disorderly conduct. The related no-contact order between the parents was lifted upon the mother's request. The father continued to test positive for marijuana through August.

The State filed its termination petition as to the father in July. The State amended its petition in September to request termination of the mother's rights as well. By October, the father was meaningfully engaging in mental-health and substance-abuse treatment. However, based on the father's track record, DHS expressed concern for the father's ability to stay the course on a long-term basis. Throughout the proceedings, DHS frequently recommended the mother to obtain housing independent of the father and distance herself from him due to the ongoing violence in their relationship. The mother declined to do so. The parents continued to reside with the children's paternal grandmother, with whom the father also has a history of violent interactions. As a result of those issues, the parents never progressed beyond fully-supervised visitation until sometime in October. Then, in late October, the parents were involved in an incident in which property was damaged when someone fired a BB gun from a vehicle the parents occupied with two other individuals. The parents' visitation reverted to fully supervised. In the coming months, the father reverted to inconsistent participation in therapy.

The matter proceeded to a termination hearing in January 2020. At that point in time the mother was residing at a women's residential facility as a condition of her recent violation of probation. Just days before she had continued to reside with the father. The mother testified she would not be able to have the children placed with her at the facility for a matter of weeks. The month prior, the father was discharged from substance-abuse and mental-health treatment for nonattendance. The mother testified she was no longer in a relationship with the father and she was pregnant, the father of the child being another man she was unable to identify. At the hearing, the social worker testified to her concern for her expectation that the mother would continue to reside with the father upon her discharge. The worker's remaining concerns for returning the children to the parents' care included the home environment, keeping the children safe and clean, domestic violence, and substance abuse.

The juvenile court ultimately terminated the parents' rights under Iowa Code section 232.116(1)(h). Both parents appeal.

## II. Standard of Review

Our review is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Our primary consideration is the best interests of the children, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the children's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011); *see also* Iowa Code § 232.116(2).

### III.    Analysis

#### A.    Sufficiency of the Evidence

Both parents challenge the State's establishment of the final element of the sole ground for termination cited by the juvenile court—that the children could not be returned to their care at the time of the termination hearing.  *See* Iowa Code § 232.116(1)(h)(4) (requiring clear and convincing evidence that the children cannot be returned to the custody of their parents at the present time); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing").

As to the mother, she had recently moved into a women's residential facility as a condition of her probation.  She testified it would be a number of weeks before the children could be placed with her there.  The evidence was clear and convincing the children could not be returned to her care at the time of the termination hearing.  As to both parents, they had recently reverted from semi-supervised to fully-supervised visitation.  While we acknowledge there were no parenting concerns during visits, the parents would need to demonstrate their ability to properly care for the children in an unsupervised setting and for longer periods of time before the children can be returned to their care.  That was not the situation at the time of the termination hearing.  Thus, we agree with the juvenile court the children could not be returned to the parents' care at the time of the hearing, and the State met its burden for termination under section 232.116(1)(h).

#### B.    Best Interests

Both parents argue termination is contrary to the children's best interests. In determining whether termination is in the best interests of children, we "give

primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). As noted, the defining elements of children's best interests are the children's safety and need for a permanent home. *H.S.*, 805 N.W.2d at 748.

The father was inconsistent in meaningfully engaging in services throughout the proceedings. While he appeared to be in a good place as to his marijuana usage at the time of the termination hearing, concerns remained, especially given the father's long history of mental-health and anger issues. The mother did meaningfully engage in services. But she knew the primary barrier to reunification was her continuing association with the father, and her refusal to obtain housing independent from him or otherwise distance herself from him was problematic. At one point late in the proceedings, the mother moved in with her sister in Missouri, a residence it appeared the children would be able to be placed with her in. However, after mere weeks, the mother returned to Iowa to continue residing with the father.

At the end of the day, the children could not be returned to either parents' care despite roughly two years of services. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will . . . be able to provide a stable home for the child." *In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) (quoting *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010)). The parents have been given ample time to get their affairs in order, and these children's best interests are best served by providing permanency and stability now. *See id.* at 778 ("It is simply not in the

best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." (quoting *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997))). An appropriate adoptive family has been located for these children. These children should not have to wait any longer for permanency; they are entitled to immediate constant, responsible, and reliable parenting. *See In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990). Because termination followed by adoption will satisfy these children's need for a permanent home, we conclude termination is in their best interests.

### C. Statutory Exception

Both parents request the application of the statutory exception to termination contained in Iowa Code section 232.116(3)(c). We first note the application of the statutory exceptions to termination is "permissive, not mandatory." *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (quoting *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014)). While we acknowledge bonds exist between the parents and children, those bonds can only be described as limited at best given these children's young age and placement outside of their parents' care for most of their short lives. Upon our de novo review, we find the evidence insufficient to show "termination would be detrimental to the child[ren] . . . due to the closeness of the parent-child relationship." *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (noting parent bears burden to establish exception to termination). We therefore decline to apply the statutory exception to termination. Alternatively, we conclude application of the exception would be contrary to the children's best interests.

**IV.     Conclusion**

We find the evidence sufficient to support the ground for termination contained in Iowa Code section 232.116(1)(h), termination is in the children's best interests, and the exception to termination contained in section 232.116(3)(c) should not be applied.  As such, we affirm the termination of both parents' parental rights.

**AFFIRMED ON BOTH APPEALS.**